## LEWIS & JOHNSON v. STRACNER.
### No. 1541.

Court of Appeal of Louisiana. First Circuit. Jan. 28, 1936.

Kay & Kay and Frank E. Powell, all of De Ridder, for appellant.

Elmer L. Stewart, of De Ridder, for appellees.

OTT, Judge.

Plaintiffs, Lewis & Johnson, an ordinary partnership engaged in the raising of sheep and the growing of wool, seek to enjoin the defendant, Stracner, from using a certain mark and brand in marking and branding his sheep on the open range in the parishes of Beauregard and Vernon. An injunction issued against defendant in the lower court, and he has appealed.

The mark involved in the suit is called a "sharp mark." This mark, as we understand from the record, is made by cutting a slope on the upper and lower part of each ear of the animal, making the ear have a kind of sharp appearance; hence the name "sharp" mark. The brand was the figure 10 branded on the animal, but there seems to be little interest in the brand, so we will confine our discussion principally to the mark.

The law of this state recognizes a property right in the use of marks and brands to identify the ownership of animals and provides for their registry for the protection of the owner and user. Rev.St. §§ 383, 384.

Plaintiffs claim ownership of this brand and mark by virtue of a partnership agreement entered into on the 18th day of July, 1916, between defendant, F. M. Johnson, one of the plaintiffs, and C. S. Lewis, the father of the other member of plaintiff firm, which agreement reads as follows:

"This agreement entered into between C. S. Lewis, F. M. Johnson and B. K. Stracner as follows: C. S. Lewis mark Poplar Leaf in each ear. Also brand K.

"F. M. Johnson, Mark Swallow Fork & under bit in one ear and under slope in other.

"D. K. Stracner, Mark Sharp in each ear. Also Figure 10.

"We have agreed that all our sheep with above marks shall be put together for the purpose of a joint proposition and that they will be so divided equally. This is for the purpose to show that all our sheep will be as a whole and the division shall be one third to each. It is further agreed that in case of any dissatisfaction should arise we could dissolve without having any trouble but on the basis of one third."

As it is the contention of both plaintiffs and defendant that the right to use the mark and brand in question, in so far as the marking and branding of sheep is concerned, became vested in this partnership by reason of this agreement, we will begin from that point in the history of the case. After the formation of this ordinary partnership, these three men operated their sheep business together, using indiscriminately the mark and brand of any one of the three for branding and marking the sheep belonging to the partnership, but, because of its greater convenience, the sharp mark which had been used by Stracner and which he turned into

the partnership was used more frequently and on more sheep than either of the other two marks thrown into the partnership by Lewis and Johnson.

. After a few years, several transfers of the interests of Lewis and Stracner were made until, in the year 1924, the situation was exactly as it was when the partnership was first formed in 1916, as respects the interests of the partners, the use and ownership of the marks and brands, etc., with the exception that Albert F. Lewis, one of the plaintiffs, was then a partner instead of his father, C. S. Lewis, who was one of the original partners.

The business continued to be conducted in the same manner and under the same terms as under the original agreement from 1924 until 1927, when defendant, Stracner, asked for a dissolution of the partnership and partition of its assets. All agree that at this time the ownership of this sharp mark and its use on sheep was vested in the partnership. The dispute arises in the case as to whether the defendant, in the partition of the partnership, reacquired the ownership and right to use this sharp mark, or whether the remaining partners, plaintiffs here, retained the mark for use in their subsequent conduct of the business.

The case was heard and decided by the late Judge Jerry Cline, who in his usual careful and accurate analysis of the facts reached the conclusion that the defendant did not reacquire the right to use this sharp mark on his own sheep by the partition of the partnership property in 1927. The learned and lamented trial judge found that in the partition agreement when Stracner withdrew he was to get one-third of the sheep on the range belonging to the partnership, which sheep he was to select, and did select, from the southern part of the range near his home, but that the remaining two partners were to retain and use the sharp mark in their future business.

The defendant claims that he had an understanding with Mr. F. M. Johnson, when the partnership was dissolved in 1927, that he (defendant) was to get back his sharp mark with one-third of the sheep; that, at the next marking and shearing of the sheep retained by Johnson and Lewis out of the division, the sharp mark was to be dropped in order that defendant might get back his original mark; that in the meantime, in order to avoid remarking the two-thirds of

the partnership sheep retained by Johnson and Lewis until the next marking and shearing, defendant used the overslope and underbit on his one-third of the partnership sheep, this latter mark being the one that defendant had been using for some time on some of his individual sheep and other livestock not belonging to the partnership.

The defendant is to some extent corroborated in this statement as to his understanding with Johnson by Andy Gill, who claims to have been present and heard the conversation between Johnson and Stracner on this point. This witness states that Johnson said at the time that he would see Lewis about the proposition of giving back to Stracner the sharp mark.

On the contrary, Johnson denies that he ever, at any time, agreed to give back to Stracner the sharp mark, and denies that he ever agreed to talk to his partner, Lewis, about giving back to Stracner the mark. Johnson further testifies that Stracner never claimed to him that he was to get back this mark until some two years after the partition of the partnership property. ·

Mr. Lewis, the other partner, says that defendant never mentioned to him about taking back the sharp mark until some two years after the dissolution, during which time Lewis & Johnson had continued to use this sharp mark on their sheep the same as before defendant withdrew from the partnership, all of which was well known to defendant, as he lived in the same neighborhood. In fact, the defendant himself admits that he did not mention this matter to Lewis until some time after the dissolution, even though he saw Lewis quite frequently in the meantime.

The trial judge found that the position of the plaintiffs was strengthened and corroborated by other facts and circumstances in the case so as to resolve the conflicting testimony in their favor. He says:

"Stracner had some sheep in the range not belonging to the partnership, and bearing different marks, one of those being an over-slope and under-bit. At the partition, the sheep allotted to him were marked with over-slope and under-bit. Moses and Cooley, who assisted in the division, say that Stracner had used this mark for a number of years, that they were instructed to use it in the partition, and that they heard nothing about Stracner retraining the sharp mark. It would be natural for

all parties to assume that this marking sufficiently distinguished the sheep, and that a re-marking of the Stracner herd and of a large portion of the Johnson-Lewis herd was not contemplated at some time in the future."

"Doubtless the right to use a distinctive livestock mark or brand is property, more or less valuable; and it is said by counsel that an equal division by the partners necessarily included the marks and brands, as well as the sheep themselves. The original partnership agreement is pointed out as contemplating this understanding. It provides that in case of dissatisfaction, dissolution would be made 'on the basis of one-third.' But a previous stipulation is, 'This is for the purpose to show that all our sheep will be as a whole, and the division shall be one-third to each.' The division specifically refers to the sheep themselves. That the marks and brands were not considered in the contract, nor in the subsequent conduct of the business, is indicated by these provisions, and by the fact that the three marks were used indiscriminately, with the sharp mark favored, so that at the time of the partition more than one-third of the sheep bore this mark."

While the defendant owned and transferred to the partnership in 1916 this mark and brand, yet in 1929 he attempted to acquire from one Dave Austen the same mark and to have it registered in his name. The opinion of the trial judge continues:

"If the sharp mark belonged to the partnership, by original acquirement from Stracner, it would follow that he could not acquire it later from a third person, and therefore that his transaction with Dan Austin and the registry of the mark in his name, does not affect the case. If he had transferred an imperfect title to the partnership and subsequently perfected his title, the perfect title would inure to the benefit of the partnership composed of himself, Johnson and Lewis. Any title which he now claims must necessarily derive from that partnership, and depend upon the terms of the partition. While the testimony is conflicting, it is found that the circumstances add weight to the contentions of the plaintiff as to those terms, and supply the preponderance requisite for the establishment of their right to the exclusive use of the mark and brand for sheep in their range, and to the prevention of others from using the same mark and brand."

We find no error in the conclusions reached by the trial judge on the facts of the case. Under the finding of fact, the law justifies the granting of the injunction.

For the reasons assigned, the judgment is affirmed.